## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

```
_____
                              )
SAMUEL PENSAMIENTO,           )
                              )
                Petitioner,   )
                              )          Civil Action
v.                            )          No. 18-10475-PBS
                              )
JOSEPH D. MCDONALD, JR., et al.,  )
                              )
                Respondents.  )
_____)
```

## MEMORANDUM AND ORDER

May 21, 2018

Saris, C.J.

## INTRODUCTION

Petitioner Samuel Pensamiento, who was born in Guatemala, is married to a United States citizen, with whom he recently had a child. He has been in Immigration and Customs Enforcement ("ICE") custody since January 31, 2018, when he reported to Chelsea District Court for a pretrial hearing on misdemeanor criminal charges. ICE was waiting at the courthouse and detained him. Pensamiento filed a habeas petition pursuant to 28 U.S.C. § 2241, claiming that ICE was refusing to transport him to his criminal proceedings in state court and that his detention was

unlawful because he had not received a constitutionally adequate bond hearing in immigration court.[1]

On March 15, 2018, the judge on emergency duty (Burroughs, J.) entered a temporary restraining order and ordered ICE to deliver Pensamiento to his next hearing on the misdemeanor charges. See Docket No. 17 at 1-2. The order disposed of Counts I and II in Pensamiento's habeas petition. The only remaining claim for relief is Count III, in which Petitioner seeks release from detention, or, at the least, a detention hearing before this Court at which the government is required to prove by clear and convincing evidence that he is a danger to others or a flight risk. Respondents have moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), and Petitioner opposed on April 6, 2018.

At the hearing on April 25, 2018, on the motion to dismiss and the merits of the habeas petition, the government agreed to release Pensamiento for 30 days so that he could be present for the birth of his child. However, the parties agreed he would be placed back in detention unless the Court allowed his habeas petition.

After a review of the briefs, the Court **DENIES** Respondents' motion to dismiss (Docket No. 12). The Court **ALLOWS** the habeas

---

[1]   On May 14, 2018, the Court issued a memorandum and order in Figueroa v. McDonald, which addressed similar constitutional issues. See Figueroa v. McDonald, Civil No. 18-10097-PBS, 2018 WL 2209217 (D. Mass. May 14, 2018).

petition, and **ORDERS** that Petitioner not be detained again unless the immigration court holds a bond hearing where the government bears the burden of proving that Pensamiento must be detained because he is dangerous or a flight risk.

## FACTUAL BACKGROUND

Pensamiento is a 26-year-old Guatemalan national who arrived in the United States in 2013 after fleeing persecution in his home country. Pet. (Docket No. 1) ¶¶ 9, 12. He was apprehended, began asylum proceedings, and was released on bond in September 2013. Pet. ¶ 13. Petitioner was authorized to work during the pendency of his removal proceedings and received a Massachusetts driver's license. Pet. ¶ 14.

He met Yaritza Moreno, a United States citizen, while they were working in the same restaurant and while his asylum application was pending. Pet. ¶¶ 10, 15. Pensamiento and Moreno married in August 2016. Pet. ¶ 15. Moreno filed a Form I-130 petition to sponsor Pensamiento to become a lawful permanent resident, which was approved by the U.S. Citizenship and Immigration Service ("USCIS") on March 9, 2017. Pet. ¶ 16. Based on that approval, which provides a pathway to becoming a permanent resident, the Immigration Judge ("IJ") administratively closed Pensamiento's removal proceedings on September 20, 2017. Pet. ¶ 18.

The Chelsea police arrested Petitioner on December 17,
2017, after a car accident and charged him with two misdemeanor
counts: (1) leaving the scene of an accident resulting in
property damage, and (2) leaving the scene of an accident
resulting in personal injury. Pet. ¶ 20. He was arraigned on
December 18, 2017, and released on personal recognizance. Pet.
¶¶ 20-21. Pensamiento had a pretrial hearing scheduled for
January 31, 2018. Pet. ¶ 22. After the hearing, he was arrested
by ICE at the courthouse and detained. Pet. ¶ 22. Pensamiento's
removal proceedings have been re-calendared since his arrest.
Pet. ¶ 23. They remain pending, and no final order of removal
has been entered. See Pet. ¶ 23.

Petitioner's initial custody redetermination hearing was
held on February 13, 2018. Pet. ¶ 24. The IJ required
Pensamiento to prove that he was not dangerous or a flight risk
by clear and convincing evidence. Pet. ¶ 24. Based on the police
report of the then-pending misdemeanor charges, the IJ found
that Petitioner had not carried his burden on the dangerousness
inquiry and denied him bond. Pet. ¶ 24.

On March 19, 2018, Petitioner pleaded guilty to leaving the
scene of an accident resulting in property damage and was
ordered to pay a $200 fine. Docket No. 26-1 at 8. Other than the
guilty plea for this misdemeanor, Pensamiento has no criminal
record anywhere in the world. See Pet. ¶ 11. The Commonwealth

4

dismissed the charge of leaving the scene of an accident resulting in personal injury. Docket No. 26-1 at 8.

Pensamiento had a second bond hearing on April 3, 2018, after the charges were resolved. Docket No. 26-2 ¶ 5. Again, the IJ placed the clear-and-convincing burden on Petitioner and denied his request for release. Docket No. 26-2 ¶ 7. There is no evidence that Pensamiento has appealed either of the IJ's bond decisions to the Board of Immigration Appeals ("BIA"). See Docket No. 26 at 6 n.2.

During the hearing on April 25, 2018, the parties reached an agreement to temporarily release Pensamiento on a GPS tracking device for 30 days so that he could be present for the birth of his child. See Docket No. 33. It is the Court's understanding that he has been released on these conditions.

**DISCUSSION**

I.   **Motion to Dismiss**

   A.   **Legal Standard**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(1), the plaintiff has the burden of establishing that subject-matter jurisdiction exists. See Calderón–Serra v. Wilmington Trust Co., 715 F.3d 14, 17 (1st Cir. 2013). "When a district court considers a Rule 12(b)(1) motion, it must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." Merlonghi v.

<u>United States</u>, 620 F.3d 50, 54 (1st Cir. 2010). "The district
court may also 'consider whatever evidence has been submitted,
such as the depositions and exhibits.'" <u>Id.</u> (quoting <u>Aversa v.</u>
<u>United States</u>, 99 F.3d 1200, 1210 (1st Cir. 1996)).

### B.   Subject-Matter Jurisdiction

Respondents first argue that this Court lacks subject-
matter jurisdiction over Pensamiento's habeas petition based on
the REAL ID Act. The REAL ID Act, passed in 2005, stripped the
federal district courts of jurisdiction to review aliens'
challenges to their final orders of removal. See 8 U.S.C.
§ 1252(a)(5) ("[A] petition for review filed with an appropriate
court of appeals . . . shall be the sole and exclusive means for
judicial review of an order of removal."); <u>id.</u> § 1252(b)(9)
(consolidating "review of all questions of law and fact,
including interpretation and application of constitutional and
statutory provisions" arising from a removal action in the
statute's judicial review procedure). The statute also insulates
discretionary executive decision-making from review, mandating
that "no court shall have jurisdiction to hear any cause or
claim by or on behalf of any alien arising from the decision or
action by the Attorney General to commence proceedings,
adjudicate cases, or execute removal orders against any alien."
<u>Id.</u> § 1252(g).

Despite these jurisdiction-stripping provisions, the district court may still review habeas challenges to unlawful immigration detention. See Aguilar v. U.S. Immigration and Customs Enforcement Div. of Dep't of Homeland Sec., 510 F.3d 1, 11 (1st Cir. 2007) ("[D]istrict courts retain jurisdiction over challenges to the legality of detention in the immigration context."). The court's habeas jurisdiction "encompasses constitutional challenges regarding the availability of bail." Id. Thus, Pensamiento's petition brings precisely the type of claim that the First Circuit has held to be within the district court's jurisdiction. See id.

Respondents next argue that, to the extent Petitioner is asking this Court to review the IJ's discretionary decision to deny his release, jurisdiction is precluded by 8 U.S.C. § 1226(e). Congress has eliminated judicial review of discretionary custody determinations. See 8 U.S.C. § 1226(e). Section 1226(e) states: "No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." Id. This provision has been held to bar an alien's challenge to "a 'discretionary judgment' by the Attorney General or a 'decision' that the Attorney General has made regarding his detention or release." Demore v. Kim, 538 U.S. 510, 516 (2003).

7

What § 1226(e) does not bar, however, are constitutional challenges to the immigration bail system. See Jennings v. Rodriguez, 138 S. Ct. 830, 841 (2018) (holding that challenges to "the extent of the Government's detention authority" are not precluded by § 1226(e)); Demore, 538 U.S. at 517; see also Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011) ("[C]laims that the discretionary process itself was constitutionally flawed are 'cognizable in federal court on habeas.'" (quoting Gutierrez-Chavez v. INS, 298 F.3d 824, 829 (9th Cir. 2002))).

The Court's jurisdiction is not barred by § 1226(e) in this case. Pensamiento is not challenging the IJ's discretionary decision to keep him in detention. Instead, he is arguing that the immigration bond system, in which aliens detained pursuant to § 1226(a) must prove they are not dangerous and are not flight risks, is unconstitutional. See Docket No. 26 at 6. This type of constitutional claim "falls outside of the scope of § 1226(e)" because it is not a matter of the IJ's discretionary judgment. Jennings, 138 S. Ct. at 841. This Court has subject-matter jurisdiction over Pensamiento's habeas petition.

C.   **Exhaustion of Administrative Remedies**

In a footnote in their motion to dismiss, Respondents claim that judicial review is barred because Petitioner failed to exhaust his administrative remedies prior to filing his habeas petition. See Docket No. 13 at 7 n.8. The argument is not well

developed and is waived, but the Court addresses it briefly here.

There is no statutory exhaustion requirement to which Pensamiento must adhere. See Flores-Powell v. Chadbourne, 677 F. Supp. 2d 455, 463 (D. Mass. 2010). In this case, moreover, Pensamiento did argue before the IJ that the burden of proof should be placed on the government. See Docket No. 26-2 ¶ 4. Furthermore, any appeal to the BIA would be futile based on the burden allocation holding of In re Guerra, 24 I. & N. Dec. 37 (BIA 2006). See id. at 38. For these reasons, the Court does not require Petitioner to fully exhaust his administrative remedies. See McCarthy v. Madigan, 503 U.S. 140, 146-49 (1992) (listing "circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion," including instances where it would be futile), superseded by statute on other grounds, Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, § 803, 110 Stat. 1321.

## II.  **Merits of the Habeas Petition**

### A.  **Legal Framework for Bond Hearings**

Pensamiento is detained under 8 U.S.C. § 1226(a). Pursuant to that provision, "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). When the alien is not a criminal alien, the Attorney General may continue to detain him

or may release him on "bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General" or "conditional parole." Id. § 1226(a)(1)-(2). After ICE makes the initial decision to detain an alien, the alien may request a custody redetermination hearing from an IJ at any time before a removal order becomes final. 8 C.F.R. § 236.1(d)(1). The IJ's bond decision is appealable to the BIA. 8 C.F.R. § 1003.19(f). Notably, § 1226(a) is silent as to whether the government or the alien bears the burden of proof at a custody redetermination hearing and what amount of evidence would satisfy that burden. See 8 U.S.C. § 1226(a).

In denying Pensamiento discretionary release on bond, the IJ relied on the decision by the BIA in Guerra, which sets out the agency's interpretation of that statutory silence. The BIA has held that, in a custody redetermination hearing under § 1226(a), "[t]he burden is on the alien to show to the satisfaction of the [IJ] that he or she merits release on bond." Guerra, 24 I. & N. Dec. at 40; accord In re Adeniji, 22 I. & N. Dec. 1102, 1116 (BIA 1999) (holding that "respondent must demonstrate that his release would not pose a danger to property or persons, and that he is likely to appear for any future

proceedings").[2] The alien must show that he is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." Guerra, 24 I. & N. Dec. at 40. Since Adeniji, the BIA has repeatedly reaffirmed that the burden should be on the alien. See Matter of Fatahi, 26 I. & N. Dec. 791, 793 (BIA 2016); Guerra, 24 I. & N. Dec. at 40.

The IJ required Pensamiento to demonstrate that he was not dangerous by clear and convincing evidence, but the "clear and convincing" standard appears nowhere in Guerra or Adeniji. The "clear and convincing" language does appear in a regulation, which the IJ cited. See 8 C.F.R. § 1003.19(h)(3). However, that regulation does not seem to be applicable to Petitioner.[3] It applies to "alien[s] subject to section 303(b)(3)(A) of Div. C of Pub. L. 104-208" -- a provision dealing with "Transition Period Custody Rules" and criminal aliens. Id.; see also Illegal Immigration Reform and Immigrant Responsibility Act of 1996,

---

[2]   This language is drawn from a regulation governing the authority of immigration officers who may issue arrest warrants. See 8 C.F.R. § 236.1(c)(8) (requiring the alien to "demonstrate to the satisfaction of the officer" that he is neither dangerous nor a flight risk to be released). The BIA has applied the burden allocation and standard of proof in 8 C.F.R. § 236.1(c)(8) to bond determinations by IJs. See Adeniji, 22 I. &. N. Dec. at 1112-13.

[3]   At the hearing on April 25, 2018, the government suggested that the clear and convincing standard in 8 C.F.R. § 1003.19(h)(3) might apply to Pensamiento. See Docket No. 40 at 29-30. No legal authority to support this suggestion has been presented to the Court.

Pub. L. No. 104-208, § 303, 110 Stat. 3009 (1996). Accordingly, as a preliminary matter, the IJ's holding appears to violate the evidentiary standard set by the BIA.

Recently, the Supreme Court has addressed the procedures required in a custody redetermination hearing under § 1226(a). See Jennings, 138 S. Ct. at 847-48. In that case, the class had originally argued that, absent a requirement for periodic bond hearings, 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c) would violate the Due Process Clause. See id. at 839. Instead of addressing the constitutional argument, however, the Ninth Circuit employed the canon of constitutional avoidance and interpreted § 1226(a) to require "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." Id. at 847. But the Supreme Court held that "[n]othing in § 1226(a)'s text . . . even remotely supports the imposition of either of those requirements." Id. (emphasis added). The Supreme Court reversed and remanded to the Ninth Circuit with instructions to consider the constitutional questions on the merits. See id. at 851.

Thus, while the Supreme Court has held that § 1226(a) does not mandate that a clear and convincing evidence burden be placed on the government in bond hearings, it left open the

question of whether the Due Process Clause does. Pensamiento asks the Court to answer that question today.

### B.    Analysis

Petitioner maintains that the Constitution requires an immigration bond hearing at which the government must prove by clear and convincing evidence that an alien is dangerous or poses a flight risk before the alien can be detained. <u>See</u> Pet. ¶ 40. Essentially, Pensamiento asks this Court to hold that his initial bond redetermination hearing violated the Due Process Clause because the IJ placed the burden of proof on him, pursuant to <u>Adeniji</u> and <u>Guerra</u>. <u>See</u> Docket No. 26 at 7.

The Fifth Amendment's Due Process Clause mandates that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that Clause protects." <u>Zadvydas v. Davis</u>, 533 U.S. 678, 690 (2001). The Supreme Court has held that the Due Process Clause "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." <u>Id.</u> at 693.

At least one circuit has already held that, in § 1226(a) custody hearings, the Constitution mandates that (1) the burden must be placed on the government and (2) the standard is clear

and convincing evidence. See Singh, 638 F.3d at 1203[4]; see also
Doe v. Smith, Civil No. 17-11231-LTS, 2017 WL 6509344, at *6 (D.
Mass. Dec. 19, 2017) (noting that "in some circumstances, due
process requires noncitizens whose detention has become
unreasonably prolonged to be afforded bond hearings at which
[the government] bears the burden of proving dangerousness or
risk of flight by clear and convincing evidence"); see generally
Mary Holper, The Beast of Burden in Immigration Bond Hearings,
67 Case W. Res. L. Rev. 75 (2016) (arguing that the current
burden allocation does not comport with the Due Process Clause).

In Singh, the Ninth Circuit reasoned that "due process
requires 'adequate procedural protections' to ensure that the
government's asserted justification for physical confinement
'outweighs the individual's constitutionally protected interest
in avoiding physical restraint.'" Singh, 638 F.3d at 1203
(quoting Casas-Castrillon v. Dep't of Homeland Sec., 535 F.3d
942, 950 (9th Cir. 2008)). The Ninth Circuit held that the

---

[4]     Prior to Singh, the Ninth Circuit had employed the canon of
constitutional avoidance to construe § 1226(a) as requiring the
Attorney General to provide a bond hearing to an alien detained
for a prolonged period. See Casas-Castrillon v. Dep't of
Homeland Sec., 535 F.3d 942, 951 (9th Cir. 2008). This statutory
holding does not survive Jennings. See Jennings, 138 S. Ct. at
847-48 (looking at the text of § 1226(a) and refusing to read
procedural protections into it). However, in Jennings, the
Supreme Court did not address the Ninth Circuit's constitutional
holding in Singh about the burden and standard of proof when a
hearing does occur. See Cortez v. Sessions, No. 18-cv-01014-DMR,
2018 WL 1510187, at *9 (N.D. Cal. Mar. 27, 2018).

government is the party who must prove detention is justified.
See id.; cf. Foucha v. Louisiana, 504 U.S. 71, 81–82 (1992)
(striking down Louisiana statute for continued detention of
defendants acquitted based on insanity under the Due Process
Clause because "the statute place[d] the burden on the detainee
to prove that he is not dangerous," and civil commitment
required the government to prove by clear and convincing
evidence that an individual needed to be detained). In the case
of a deprivation of liberty in the immigration context, the
Ninth Circuit further held that the clear and convincing
evidence standard was necessary "[b]ecause it is improper to ask
the individual to 'share equally with society the risk of error
when the possible injury to the individual' . . . is so
significant." Singh, 638 F.3d at 1203–04 (quoting Addington v.
Texas, 441 U.S. 418, 427 (1979)).

Here, in support of its argument that the burden is
properly placed on the alien, the government cites Demore and
Zadvydas in a footnote. See Docket No. 38 at 3 n.1. In Demore, a
criminal alien who conceded that he was deportable was subject
to mandatory detention pending his removal proceedings under
8 U.S.C. § 1226(c). See 538 U.S. at 513–14. Before enacting that
statutory provision, Congress had found that over 20 percent of
deportable criminal aliens who had been released on bond failed
to appear for their removal proceedings. Id. at 519–20.

Moreover, one study showed that 77 percent of deportable criminal aliens were arrested again upon release, and 45 percent were arrested multiple times. Id. at 518-19. Noting that mandatory detention under § 1226(c) was Congress's response to those findings, the Supreme Court reiterated that "[d]etention during removal proceedings is a constitutionally permissible part of that process." Id. at 531. The Court further held that no individualized bond hearing was constitutionally necessary, because "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." Id. at 528, 531.

But Demore is not applicable here because it involved criminal aliens subject to mandatory detention. In contrast, this case involves a different statutory section, § 1226(a), which permits release of non-criminal aliens pending their removal proceedings. The Supreme Court has not yet determined what process is due when an IJ does hold an individualized bond hearing for non-criminal aliens.

Zadvydas provides some guidance, although it too deals with a different question: indefinite detention in the post-removal period. There, the Supreme Court explained that it had "upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections." Zadvydas, 533 U.S. at 690-91. The Court then cited

16

to criminal pretrial detention and civil commitment cases, making it clear that one important procedural protection for preventive detention is the placement of the burden of proof on the government. See id. at 691 (comparing United States v. Salerno, 481 U.S. 739 (1987), in which Court upheld Bail Reform Act, with Foucha, in which Court struck down civil detention statute with burden on detainee). And, while Zadvydas requires detained aliens to initially produce evidence that they are unlikely to be removed within a reasonable time period, the government still holds the final burden of persuading a court that continued detention is justified. See id. at 701 ("[O]nce the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.").

With the guideposts of Zadvydas and Demore, this Court holds that the Constitution requires placing the burden of proof on the government in § 1226(a) custody redetermination hearings. Requiring a non-criminal alien to prove that he is not dangerous and not a flight risk at a bond hearing violates the Due Process Clause. See Singh, 638 F.3d at 1203. In cases where a non-criminal alien's liberty may be taken away, due process requires that the government prove that detention is necessary. See Foucha, 504 U.S. at 81-82; Addington, 441 U.S. at 427. This is

17

especially true when individuals may be detained for extended periods of time. See Jennings, 138 S. Ct. at 860 (Breyer, J., dissenting) (stating that class members had been detained for periods ranging from six months to 831 days while pursuing asylum petitions).

Pensamiento argues that the standard of proof in bond hearings under § 1226(a) must be clear and convincing evidence to provide due process. This challenge presents a more difficult question in light of the Supreme Court's holding that the government need not use the "least burdensome means to accomplish its goal" to comport with the Due Process Clause. Demore, 538 U.S. at 528. Currently, the alien must prove "to the satisfaction of the [IJ]" that he is neither dangerous nor a flight risk. Guerra, 24 I. & N. Dec. at 40. If that same burden were placed on the government, the Court is not persuaded that that standard would violate the Due Process Clause.

Finally, Petitioner must show he was prejudiced by the constitutional error. See Singh, 638 F.3d at 1205-06. If the government had borne the burden of proof, the IJ could well have found that Pensamiento was not dangerous based on a single misdemeanor conviction, for which he was fined $200. But see Maldonado-Velasquez v. Moniz, 274 F. Supp. 3d 11, 13 (D. Mass. 2017) (finding immigration detainee challenging burden allocation was not prejudiced when detainee had four arrests and

nine charges, including carrying a dangerous weapon, possession
of ammunition, and assault with a dangerous weapon).

The government's response to Petitioner's due process claim
is that the BIA's decision to place the burden on the alien is
entitled to deference under Chevron, U.S.A., Inc. v. Natural
Resources Defense Council, 467 U.S. 837 (1984).[5] See Docket No.
38 at 1-9. Respondents' main argument is that requiring the
alien to prove she should be released from detention is a
reasonable interpretation of § 1226(a) because it is consistent
with Congress's intent in enacting the Illegal Immigration
Reform and Immigrant Responsibility Act of 1996. See Docket No.
38 at 7-9. The government urges the Court to grant the agency
deference and dismiss the petition on this basis under Rule
12(b)(6). See Docket No. 38 at 8-9. Regardless of whether or not
Chevron deference applies to the BIA's interpretation of the
statute, the issue before the Court is whether the Constitution
requires the government to bear the burden of proof in § 1226(a)
bond hearings. A Chevron argument about statutory interpretation
does not change the constitutional analysis. A new bond hearing

---

[5]    The government has not rebutted Petitioner's due process
argument with constitutional counterarguments. See Docket No. 13
at 2-9; Docket No. 38 at 1-9.

with the correct burden of proof is therefore required under the
Due Process Clause of the Fifth Amendment.[6]

### ORDER

The Court **DENIES** Respondents' motion to dismiss (Docket No.
12). Counts I and II are dismissed as moot. With respect to
Count III, the Court **ALLOWS** the habeas corpus petition, and
**ORDERS** that Petitioner not be re-detained unless the immigration
court holds a new custody hearing at which the government must
prove that Pensamiento's detention is necessary because he is
dangerous or a flight risk. The Court dismisses Joseph D.
McDonald, Jr., because Antone Moniz and Thomas Brophy are the
appropriate respondents.


/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge

---

[6]     Pensamiento raises two additional arguments in his
opposition to the motion to dismiss. Pensamiento says that
§ 1226(a) can be read to "implicitly" place the burden of proof
on the government, "in light of other provisions in the
Immigration and Nationality Act." Docket No. 26 at 9. Petitioner
also argues that Adeniji and its progeny established an agency
rule that is arbitrary and capricious under the Administrative
Procedure Act. See 5 U.S.C. § 706(2)(A). Because the Court has
ruled on the due process issue in Count III of the petition, it
does not reach Pensamiento's alternative arguments here.